UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LESLIE NACHMAN,<br><br>　　　　　　　　　Plaintiff,<br>v.<br>REGENOCYTE WORLDWIDE, INC, et al.,<br>　　　　　　　　　Defendants. | Case No. 2:13-cv-00319-MMD-PAL<br><br>ORDER<br><br>(Defs' Motion to Dismiss – dkt. no. 23;<br>Defs' Motion Motion to Transfer<br>– dkt. no. 24) |

**I.   SUMMARY**

Before the Court are Defendants Michael R. Calcaterra and Intercellular Sciences, LLC's ("Moving Defendants") Motion to Dismiss (dkt. no. 23) and Motion to Transfer (dkt. no. 24).[1] For the reasons set out below, the motions are denied.

**II.   BACKGROUND**

The following allegations are taken from the Complaint. Plaintiff Leslie Nachman is, and was at all relevant times, a resident of Clark County, Nevada. Plaintiff wired money from Las Vegas, Nevada, to Defendant Regenocyte, LLC,[2] a Florida company, for the purposes of receiving stem cell treatment for his cardiac condition. Regenocyte accepted the payment and provided treatment services in 2009. In 2012, Regenocyte and Defendant Dr. Zannos Grekos, a physician working with Regenocyte, determined that Plaintiff's condition required further treatment. Around this time, Regenocyte

---

[1]The Motion to Dismiss and Motion to Transfer are identical. For the purposes of this Order, the Court will cite to the Motion to Dismiss (dkt. no. 23) only. This Order resolves both motions.

[2]Regenocyte, LLC, along with Defendants Regenocyte Worldwide, Inc. and Regenocyte Therapeutic, LLC, are hereby referred to as "Regenocyte."

stopped being an active entity in Florida and Defendant Intercellular Sciences, LLC, ("Intercellular") began offering similar services and treatments at the same Florida address with the same employees and contractors. Intercellular is also a Florida company. In September, 2012, a representative of Intercellular provided Plaintiff with a contract for a second round of stem cell treatment with Regenocyte, and Plaintiff signed. Plaintiff wired money to Regenocyte for the second round of treatment. Between September 2012 and November 2012, Defendants Regenocyte, Intercellular, Dr. Grekos and Michael R. Calcaterra represented that an Israeli lab where Plaintiff's stem cells would be processed was set to re-open and that treatment would be scheduled. Defendants knew, however, that the Israeli lab was closed and that Defendants would not be able to perform the treatment services. Eventually, Plaintiff paid another facility for the treatment. Regenocyte and Intercellular have refused to return Plaintiff's money.

After Plaintiff received his first treatment in 2009, he recorded a video testimonial. Regenocyte posted videos of Plaintiff on its website and used his likeness in promotional and advertising materials. Plaintiff never signed a written agreement to authorize the use of his videos and images. After Regenocyte failed to perform the second round of treatment and refused to return Plaintiff's money, Plaintiff demanded that Regenocyte remove his videos and images from its website and advertising materials. Regenocyte refused. Regenocyte was aware that Plaintiff is a resident of Clark County, Nevada and its website is, and was, accessible in Clark County, Nevada.

The Complaint alleges the following claims: (1) breach of contract against Regenocyte; (2) unjust enrichment against Regenocyte; (3) intentional misrepresentation against all Defendants; (4) negligent misrepresentation against all Defendants; and (5) copyright violation against Regenocyte and Intercellular. Moving Defendants now move to dismiss the Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3). (Dkt. no. 23.) In the alternative, they move to transfer venue. Plaintiff filed an opposition on June 3, 2013 ("Opposition"). (Dkt. no. 30.) Moving Defendants did not file a reply.

The Motion to Dismiss is limited in scope. Moving Defendants only argue that Plaintiff has not shown that jurisdiction and venue are proper as to his copyright violation claim. (Dkt. no. 23 at 2-3, 4-5.) The copyright violation claim is only asserted against Regenocyte and Intercellular. Moving Defendants argue that once the copyright claim is dismissed, the Court no longer has supplemental jurisdiction over the remaining claims. (*Id.* at 2-3.)

### III. DISCUSSION

#### A. Dismissal Pursuant to Rule 12(b)(2)

##### 1. Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction [under Federal Rule of Civil Procedure 12(b)(2)], the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To meet this burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process. *Id.* Courts must consider whether personal jurisdiction exists over each defendant separately. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

Federal courts have personal jurisdiction over defendants to the same extent as the state courts "in the state in which the [federal] district court is located." *Huffy Corp. v. Overlord Indus.*, 246 F. Supp. 2d 1093, 1096 (D. Nev. 2003) (*quoting* Fed. R. Civ. P. 4(k)(1)(A)). Under Nevada's long-arm statute, a Nevada court "may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the [C]onstitution of [Nevada] or the Constitution of the United States." NRS § 14.065(1). Thus, "Nevada's long-arm statute reaches the limits of due process set by the United States Constitution." *Baker v. Dist. Ct.*, 999 P.2d 1020, 1023 (Nev. 2000).

Due process requires that a nonresident defendant have minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional

3

notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 838 (9th Cir. 1986). A defendant's conduct and connection with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process is "whether the defendant purposefully established 'minimum contacts' in the forum [s]tate," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 316), and "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation omitted). The "essential" inquiry is whether "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws." *Id.* at 475. These due process concerns are satisfied by a finding of either general or specific jurisdiction.

### 2. Specific Jurisdiction Analysis

Specific jurisdiction is analyzed under a three-prong test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421). Plaintiff bears the burden of satisfying the first two prongs. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). If Plaintiff does so, the burden then shifts to Moving Defendants to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

### a. Purposeful direction

For the first prong of the specific jurisdiction analysis, the Ninth Circuit employs a purposeful direction analysis. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (*citing Schwarzenegger*, 374 F.3d at 802). In tort cases, the Ninth Circuit "typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc). The "effects" test, which derives from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell, LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (*quoting Yahoo!*, 433 F.3d at 1206).

The Court finds that Plaintiff has met his burden with respect to the first prong of the specific jurisdiction analysis.

First, the Complaint alleges that Regenocyte committed intentional acts. It alleges that Regenocyte posted videos and images of Plaintiff on their website without a written agreement, and refused to take the videos and images down even after Plaintiff's request. (Dkt. no. 1 at ¶¶ 65–70.)

Second, the Court concludes that Regenocyte is alleged to have expressly aimed its actions at Nevada. "[T]he express aiming requirement . . . is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *CollegeSource*, 653 F.3d at 1077 (*quoting Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). The Complaint alleges that: (1) Regenocyte was aware that Plaintiff was a resident of Nevada (dkt. no. 1 at ¶77); (2) Plaintiff wired money to Regenocyte from Nevada for his treatment (*id.* at ¶¶17, 18); (3) Regenocyte contacted Plaintiff directly in Nevada (*id.* at

5

¶20); and (4) Regenocyte knew its website could be accessed in Nevada (*id.* at ¶78). Based on those allegations, the Court can conclude that Regenocyte's alleged wrongful conduct was aimed at Plaintiff and that Defendants knew Plaintiff was a resident of Nevada.

Finally, the Court concludes that the Complaint alleges that Regenocyte caused "harm that the [D]efendant[s] know[] is likely to be suffered in the forum state." *Brayton Purcell*, 606 F.3d at 1128 (quotation omitted). As the Court has concluded that the Complaint alleges that Regenocyte knew Plaintiff was a resident of Nevada, knew that Plaintiff wired money from Nevada, and knew their website as accessible in Nevada, it follows that they knew that their wrongdoing would cause harm to Plaintiff in Nevada.

The Court finds, after consideration of the *Calder* effects test, that Regenocyte purposefully directed its alleged activities towards Nevada.

As to Intercellular, a "parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co.*, 328 F.3d at 1134 (citations omitted). However, "a subsidiary's contacts may be imputed to its parent for personal jurisdiction purposes where the subsidiary is the parent's alter ego." *In re W. States Wholesale Natural Gas Litig.*, 605 F. Supp. 2d 1118, 1132 (9th Cir. 2009) (*citing Harris Rutsky & Co.*, 328 F.3d at 1134). To demonstrate that a parent and its subsidiary are alter egos, the plaintiff must establish a prima facie case that the two companies share "such unity of interest and ownership" that the companies' separateness no longer exists and "failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quotation omitted).

The Court finds that Plaintiff has made a prima facie showing that Regenocyte is an alter ego of Intercellular. The Complaint alleges that: (1) "Intercellular's managers, members, officers, employees and/or representatives control Regenocyte" and "use the same office or business location and employ the same employees and contractors" (dkt. no. 1 at ¶9); (2) Regenocyte is undercapitalized (*id.*); (3) "Intercellular and its agents and

representatives" did not "maintain arm's length transactions between Intercellular and Regenocyte" (*id.*); (4) funds and assets are comingled (*id.*); (5) Intercellular claims to "follow in the footsteps" of Regenocyte (*id.* at ¶33); Intercellular does business at the same address as Regenocyte (*id.* at ¶29); and (6) Intercellular was formed prior to Regenocyte's deactivation with the Florida Secretary of State (*id.* at ¶28). Moving Defendants do not contest any of these allegations. The Court thus concludes that Plaintiff has made a prima facie showing that Regenocyte is a "mere instrumentality" of Intercellular and that failure to regard them as alter egos would promote abuse to the corporate form. *See In re W. States Wholesale Natural Gas Litig.*, 605 F. Supp. 2d at 1133.

Regenocyte's contacts therefore imputed to Intercellular for the purposes of the Court's jurisdiction analysis.

### b. Claim arising out of, or related to, forum activities

Moving Defendants argue that Plaintiff's claims "cannot be said to 'arise out of'" an "act within the state of Nevada" because no such act has been established. (Dkt. no. 23 at 5.) The Court disagrees. The Complaint alleges a claim for copyright violation against Regenocyte and Intercellular that arises out of Regenocyte's publication of videos and images on a website accessible in Nevada. *See Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (finding this prong is satisfied where "[plaintiff's] claim of copyright infringement arises out of [defendant's] publication of the photos on a website accessible to users in the forum state.") The Complaint also alleges that Regenocyte was paid from Nevada and directed its communications to Plaintiff in Nevada. The Court finds that this prong is satisfied

### c. Reasonableness

As the first two prongs of the specific jurisdiction analysis have been satisfied, the burden shifts to Moving Defendants to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 476-78. In determining whether the exercise of jurisdiction comports with "fair play and substantial justice" and is

therefore reasonable, courts in the Ninth Circuit consider seven factors: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole Food*, 303 F.3d at 1114.

Moving Defendants address the first, second, fifth, and sixth of these factors. As to the first factor, Moving Defendants argue that "there is no evidence that the Defendants have had any contacts with the forum . . . ." (Dkt. no. 23 at 6.) The Court has already determined that Regenocyte allegedly committed intentional acts directed at Nevada, including accepting payment from Nevada, contacting Plaintiff in Nevada and publishing Regenocyte's website in Nevada. These allegations indicate "purposeful injection." *See CollegeSource*, 653 F.3d at 1080 ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection.")

As to the second factor, Moving Defendants argue that the Defendants are all located in Florida and that interstate travel and discovery will be expensive. (Dkt. no. 23 at 6, 8-9.) They estimate that litigating the case will be six times more expensive for Defendants than Plaintiff, but provide no basis for this estimation. (*Id.* at 8-9.) "[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past." *CollegeSource*, 653 F.3d at 1080 (*quoting Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007). However, Defendants still must travel to litigate in Nevada so this factor slightly favors Defendants.

As to the fifth factor, Moving Defendants similarly argue that it would be more efficient to litigate in Florida because that's where many of the witnesses and much of the evidence will be located. This factor tips in Moving Defendants' favor only slightly

///

8

because the advances in travel and technology mean that there will not be a great difference in efficiency between the forums.

As to the sixth factor, Defendants argue that "Nevada presents little importance to Plaintiff's interest in convenient and effective relief" and that "Florida actually has some relationship to the underlying facts alleged in the Complaint, while Nevada's connection is attenuated at best . . . ." (Dkt. no. 23 at 6.) Plaintiff responds that Nevada has a "manifest interest in protecting the rights and interests of one of its citizens" and that Plaintiff has the right "to seek enforcement of his rights and collection of damages in this case and should not be limited by forcing him to travel to another jurisdiction after Defendants reached into Nevada and caused harm." (Dkt. no. 30 at 10.) The Court agrees with Plaintiff. Nevada has an interest in making sure that its citizens are protected from misrepresentation and copyright violations. Further, as the Court previously found, Regenocyte committed intentional acts directed at Nevada. This factor tips strongly in Plaintiff's favor.

After considering the *Burger King* factors, the Court concludes that Moving Defendants have not shown that the exercise of jurisdiction over Regenocyte and Intercellular as to the copyright violation claim would be unreasonable.

### B.   Dismissal Pursuant to Rule 12(b)(3)

Moving Defendants argue that venue is improper under Plaintiff's federal copyright claim. (Dkt. no. 23 at 2-3.) Civil suits related to copyrights may be brought "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit has interpreted 28 U.S.C. § 1400(a) to mean that venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir.1997), overruled on other grounds by *Feltner v. Columbia Pictures Television*, 523 U.S. 340 (1998). Plaintiff and Moving Defendants agree on this standard. (*See* dkt. no. 23 at 4; dkt. no. 30 at 5.)

///

Moving Defendants argue that this action should be dismissed for improper venue because the Court does not have personal jurisdiction as to the copyright claim. As the Court has already determined that it has personal jurisdiction over the relevant parties under Rule 12(b)(2), the Court will not dismiss the action for improper venue under Rule 12(b)(3).

### C.    Motion to Transfer

Defendants move to transfer venue to Florida under 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). However, § 1406(a) allows a court to dismiss or transfer a case only where the case lays "venue in the wrong division or district . . . ." For example, courts have used § 1406(a) to dismiss or transfer a case where the parties removed to the wrong district court, *LNV Corp. v. STK Financial, LLC*, C 11–00025, 2011 WL 4345193 (N.D. Cal. Sept. 14, 2011), or where the court finds improper venue under Rule 12(b)(3), *Ambriz v. Coca-Cola Co.*, 13-cv-03539, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014). Neither of those situations is present in this case. Further, Moving Defendants argue for transfer under the factors that are considered in a § 1404(a) analysis. The Court thus considers Moving Defendants' motion pursuant to § 1404(a).

#### 1.    Legal Standard

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005). "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (citations and quotation marks omitted).

Motions to transfer venue are considered on "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). "[28 U.S.C. § 14041(a)] has two requirements on its face:  (1) that the district to which defendants seek to have the action transferred is one in which the action might have been brought, and (2) that the

transfer be for the convenience of parties and witnesses, and in the interest of justice." *Amazon.com*, 404 F. Supp. 2d at 1259 (W.D. Wash. 2005) (citation and quotation marks omitted).

"A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones*, 211 F.3d at 498. "For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498-99. The burden of proof is on the moving party. *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F.Supp.2d 1093, 1109 (C.D. Cal. 2007).

### 2. Analysis

The relevant factors weigh against a transfer of venue under 28 U.S.C.§ 1404(a). As to the first factor, it is not clear where the relevant agreements were negotiated and executed. Moving Defendants state that the "underlying agreements in this case were presumably negotiated and executed in Florida as described in the Complaint." (Dkt. no. 23 at 8.) But Moving Defendants do not cite to the portions of the Complaint that suggest that conclusion, nor can the Court locate any. The Complaint is vague as to where the agreements were negotiated and executed. The Court therefore finds that this factor does not weigh in either direction.

As to the second factor, Moving Defendants state that "neither Florida nor Nevada can claim more familiarity with the governing law" in this case. (*Id.*) This factor, therefore, does not favor Plaintiff or Defendants.

As to the third factor, generally speaking, Plaintiff's choice of venue is entitled to deference and typically should not be disturbed. *Stewart Org., Inc. v. Ricoh Corp.*, 487

U.S. 22, 29 (1988). Moving Defendants argue that, in a copyright violation case, Plaintiff's choice of venue is entitled to less deference when Defendants "developed, tested, researched, produced, marketed, and made sales decisions" concerning the product outside Plaintiff's chosen venue. (Dkt. no. 23 at 8.) In support of that argument, Moving Defendants cite to two patent infringement cases: *Saint-Gobain Calmar, Inc. v. National Products*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002), and *S.C. Johnson & Son, Inc. v. Gillette, Co.*, 571 F. Supp. 1185, 1187–88 (N.D. Ill. 1983). Patent infringement cases are unique, however, because 28 U.S.C. § 1400(b) specifically states that they may only be brought "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." That requirement is not present in 28 U.S.C. § 1400(a), which governs copyright disputes. Further, in both of the cases cited by Moving Defendants, the courts found it significant that the plaintiffs were not residents of their chosen forum. *See Saint-Gobain Calmar*, 230 F. Supp. 2d at 659; *S.C. Johnson & Son*, 571 F. Supp. 2d at 1187. Moving Defendants have not successfully shown that Plaintiff's choice of venue is not entitled to deference in this case. Therefore, this factor weighs in favor of Plaintiff.

As to the fourth and fifth factors, Moving Defendants argue that "[t]he respective parties' contact with Nevada, as well as those relating to the causes of action in the Complaint, are infinitesimal[.]" (Dkt. no. 23 at 8.) While Defendants' overall contact with Nevada may be minimal, the Court previously found that Regenocyte and Intercellular directed activities towards Nevada that relate to Plaintiff's cause of action. Given that Plaintiff resides in Nevada, Regenocyte published videos and images on a website accessible in Nevada, Plaintiff made payment to Regenocyte from Nevada and Regenocyte contacted Plaintiff in Nevada, the Court finds that the fourth and fifth factors tip slightly in Plaintiff's favor.

As to the sixth factor, Moving Defendants state that filing costs will be the same but "air fare, lodging, meals, and so on will cost six times as much for the Defendants and their counsel as for Plaintiff and his counsel, and when one takes into consideration

the likelihood of taking depositions and otherwise conducting discovery, the comparative costs are apparent." (Dkt. no. 23 at 9.) Moving Defendants don't explain why travel would be more expensive for Defendants. Plaintiff would have to also pay for air fare, lodging and meals if the case were tried in Florida. As far as taking depositions, it is Plaintiff who will likely have to fly to Florida to depose witnesses. The Court cannot conclude that either Plaintiff or Defendants will have to spend more on litigation either way.

As to the seventh factor, Moving Defendants state that compulsory process will be "much more readily available" in Florida because that's where witnesses are likely to be located. (*Id.*) The Court cannot address this factor at this stage. Neither party has presented the Court with a list of witnesses and Moving Defendants do not make any specific arguments as to why compulsory process would not be available in Nevada. This factor does not tip either way.

Finally, as to the eighth factor, Moving Defendants argue that any evidence to discover will likely be located in Florida. (*Id.*) The Court agrees but electronic production allows all parties easy access to new sources of evidence. This factor tips slightly in Defendants' favor.

On balance the *Jones* factors disfavor transferring this case to Florida. Nevada is Plaintiff's preferred choice of forum, Plaintiff resides in Nevada, and many of the actions giving rise to the dispute occurred in, or were directed towards, Nevada. Although it would be more convenient for Defendants to litigate in Florida, it would be less convenient for Plaintiff. Section 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F. Supp. 2d 1033, 1045 (D.Minn.2001).

///

///

### IV. CONCLUSION

It is therefore ordered that Moving Defendants' Motion to Dismiss (dkt. no. 23) is denied.

It is further ordered that Moving Defendants' Motion to Transfer (dkt. no. 24) is denied.

DATED THIS 3rd day of February 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE