UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LESLIE NACHMAN,<br><br>　　　　　　　　Plaintiff,<br>v.<br>REGENOCYTE WORLDWIDE, INC., *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 2:13-cv-00319-MMD-PAL<br><br>AMENDED ORDER<br><br>(Report and Recommendation<br>– dkt. no. 75)<br>(Motion for Default Judgment<br>– dkt. no. 60) |

**I.　　SUMMARY**

Before the Court is the Report and Recommendation of Magistrate Judge Peggy A. Leen ("R&R") entered on May 28, 2014, recommending that the answers of Defendants Michael Calcaterra and Intercellular Sciences, LLC be stricken and default judgment be entered against them. (Dkt. no. 75 at 10.) Objections to the R&R were due by June 14, 2014. No objection was filed. For the reasons set out below, the R&R is accepted and adopted in full.

Also before the Court is Plaintiff Leslie Nachman's Motion for Default judgment against Defendants Regenocyte Worldwide, Inc., Regenocyte, LLC, Regenocyte Therapeutic, LLC, and Dr. Zannos Grekos ("Motion"). (Dkt. no. 60.) None of these defendants have responded. For the reasons stated below, the Motion is granted and Plaintiff is ordered to provide further briefing on damages.

## II. BACKGROUND

Plaintiff Leslie Nachman filed this complaint on February 26, 2013, against Defendants Regenocyte Worldwide, Inc. ("Regenocyte Worldwide"), Regenocyte, LLC ("Regenocyte"), Regenocyte Therapeutic, LLC ("Regenocyte Therapeutic"), Intercellular Sciences, LLC ("Intercellular"), Dr. Zannos G. Grekos, Michael R. Calcaterra, Does I through X, and Roe Corporations I through X. (Dkt. no. 1.)

The Complaint alleges the following. Plaintiff first contacted Regenocyte in 2009 regarding Regenocyte's services and treatments. (Dkt. no. 1 at 3 ¶ 14.) That same year, Plaintiff paid Regenocyte $64,000 for stem cell treatment for his cardiac condition. (*Id.* at 3-4 ¶ 16-18.) The treatment was successful. (*Id.* at 4 ¶ 19.) However, Plaintiff continued to follow up with Regenocyte and Dr. Grekos, Regenocyte's employee, to monitor his progress. (*Id.*) In 2012, Regenocyte and Dr. Grekos opined that Plaintiff would require further treatment and began working with Plaintiff to schedule a second treatment. (*Id.* at ¶ 21-22.) In September 2012, Plaintiff executed a contract with Regenocyte concerning the second treatment. (*Id.* at ¶ 26.) Regenocyte and Dr. Grekos knew at the time of diagnosis that Plaintiff's condition required treatment within a reasonable time. (*Id.* at ¶ 23.) On September 12, 2012, Plaintiff paid Regenocyte $49,950 pursuant to the contract. (*Id.* at 5 ¶¶ 35, 37.) However, Regenocyte and Dr. Grekos never performed the treatment. (*Id.* at ¶ 46.)

Defendants Regenocyte, Regenocyte Worldwide, Regenocyte Therapeutic and Dr. Grekos failed to respond to the pleadings. The Clerk entered default against Dr. Grekos on May 6, 2013, and against Regenocyte, Regenocyte Worldwide, and Regenocyte Therapeutic on May 31, 2013. (Dkt. nos. 22, 29.) Plaintiff then filed a Motion for Default Judgment against Dr. Grekos, Regenocyte, Regenocyte Worldwide, and Regenocyte Therapeutic. (Dkt. no. 60.)

Defendants Intercellular and Calcaterra's counsel, Mr. Grasso, filed a motion to withdraw on June 12, 2013, after repeated failed attempts to contact his clients. (Dkt. no. 31.) On June 19, 2013, Judge Leen granted this motion and ordered Intercellular to

retain new counsel and Calcaterra to either retain new counsel or file notice that he will appear *pro se* by July 19, 2013 ("June 19, 2013 Order"). (Dkt. no. 32.) By August 1, 2013, neither Intercellular nor Calcaterra had complied with the June 19, 2013, Order. (Dkt. no. 35.) Judge Leen ordered Intercellular and Calcaterra to show cause why sanctions should not be awarded. (*Id.*) Judge Leen also warned Intercellular and Calcaterra that failure to comply would result in a recommendation of sanctions, including case-dispositive sanctions. (*Id.*) On August 22, 2013, Mr. Grasso responded on behalf of Intercellular, stating that Intercellular's non-compliance with the June 19, 2013, Order was the result of Calcaterra's "unintentional neglect of business, and did not arise out of a desire to delay the instant proceedings or to prejudice the other parties to this matter." (Dkt. no. 39.) On the same day, Calcaterra filed a notice of intent to proceed *pro se* and stated that his non-compliance with the June 19, 2013, Order was a result of his "unintentional neglect to monitor this matter during a period of time wherein [he] was experiencing severe financial and professional difficulties." (Dkt. no. 37.)

Judge Leen extended the discovery cutoff pursuant to the parties' stipulated need for more time to conduct discovery. (Dkt. no. 47.)  A second stipulation to extend the time for discovery was filed on January 17, 2013. (Dkt. no. 51.) At a hearing regarding the stipulation on February 11, 2013, Judge Leen extended the time for discovery after Mr. Grasso assured Judge Leen that he had been in contact with Intercellular and that his client had agreed to provide the requested discovery by the following day. (Dkt. no. 62.) After Intercellular and Calcaterra failed to respond to discovery requests, Judge Leen granted Plaintiff's Motion to Compel and awarded sanctions against the two Defendants in the amount of $2,025.00. (Dkt. no. 67.) Judge Leen again warned Intercellular and Calcaterra that a failure to comply would result in a recommendation to the Court that the two Defendants' answers be stricken and default judgment be entered against them. (*Id.*) Mr. Grasso filed a second motion to withdraw (dkt. no. 71), which was granted on March 24, 2014 (dkt. no. 73). Intercellular was given until April 21, 2014, to retain new counsel. (*Id.*)

However, Intercellular and Calcaterra have failed to provide the required and requested discovery and Intercellular has failed to retain new counsel. (Dkt. no. 74 at 3.) Plaintiff filed a Motion for Sanctions against Intercellular and Calcaterra requesting that this Court: (1) deem all requests for admissions admitted; and (2) strike the Defendants' answers and enter default against them. (*Id.* at 3-4.) The R&R recommends granting both requests. (Dkt. no. 75.)

### III. REPORT AND RECOMMENDATION

#### A. Legal Standard

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *Id.* Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review. *See, e.g.*, *Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

Nevertheless, the Court finds it appropriate to engage in a *de novo* review of all issues to determine whether to adopt the R&R.

#### B. Analysis

Rule 26(a) requires parties to make certain initial disclosures. Fed. R. Civ. P. 26(a). If a party fails to provide the required disclosures within the time allowed, that

party may not admit this evidence in motion, hearing, or trial unless the failure to disclose is justified or harmless. Fed. R. Civ. P. 37(c)(1). Furthermore, the Court is authorized to issue sanctions for a party's failure to obey a scheduling order or other pretrial order. Fed. R. Civ. P. 16(f). Rule 37(b) authorizes the court to issue a wide variety of sanctions in these situations, including case-dispositive sanctions, such as striking pleadings and rendering a default judgment. Fed. R. Civ. P. 37(b)(2)(A)(iii)-(vi).

A district court's decision to award case-dispositive sanctions is reviewed for abuse of discretion by the Ninth Circuit. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (citation omitted). The Ninth Circuit has identified five factors that must be considered by the district court before issuing case-dispositive sanctions under Rule 37(b)(2). *Id.* These factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* In determining whether or not a district court considered the availability of less drastic sanctions, the Ninth Circuit examines whether the court: "(1) discussed explicitly the feasibility of less drastic sanctions and explained why alternative sanctions would be inappropriate, (2) implemented alternative sanctions before entering default, and (3) warned the party of the possibility of default before actually ordering it." *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997) (citation omitted).

The R&R considers these factors and concludes that Intercellular and Calcaterra's failure to follow orders and other obligations in this action warrant striking their answers and entering default against them. (Dkt. no. 75 at 9-10.) According to the R&R, the only factor weighing against entering default against Intercellular and Calcaterra is the public policy of disposition of a case on its merits. (*Id.* at 9.) The Court agrees with the R&R's conclusion.

Intercellular and Calcaterra have repeatedly failed to comply with court orders. These Defendants have not responded to Plaintiff's discovery requests despite multiple

discovery extensions. This disregard of the Court's orders has prevented the expeditious resolution of litigation and has interfered with the Court's ability to manage its docket. Defendants' failure to comply with Judge Leen's orders and to provide discovery has halted this litigation and prevented Plaintiff from being able to proceed. Thus, the Court finds that the first three factors weigh in favor of entering default judgment against Intercellular and Calcaterra.

The fifth factor also weighs in favor of entering default against Intercellular and Calcaterra. The Court has repeatedly warned Intercellular and Calcaterra that a failure to comply with Court orders would result in a recommendation of default judgment against them. However, Intercellular and Calcaterra have continuously failed to comply with Court orders and have failed to provide the necessary disclosures. The Court previously awarded a monetary sanction against Intercellular and Calcaterra and yet these Defendants have still failed to respond to Plaintiff's requests for discovery. Given the repeated failure to comply, in spite of the sanction already issued, it is unlikely that a less drastic sanction would be effective. Thus, the fifth factor weighs in favor entering default judgment against Intercellular and Calcaterra.

However, a default judgment is not a judgment on the merits, thus the fourth factor is the only one which weighs against entering default.

Because four out of five factors favor striking Intercellular and Calcaterra's answers and entering default against them, the Court finds good cause to adopt the recommendation in the R&R.

**IV.     MOTION FOR DEFAULT JUDGMENT**

**A.     Legal Standard**

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk

///

must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, a court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in a court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of a court's discretion in determining whether to grant default judgment:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

**B.     Analysis**

**1.     Procedural Requirements**

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). The Clerk properly entered a default against Regenocyte, Regenocyte Worldwide, Regenocyte Therapeutic, and Dr. Grekos (collectively "Defaulting Defendants") pursuant to Fed. R. Civ. P. 55(a). (Dkt. no. 22 & dkt. no. 29.) Defaulting Defendants are not infants or incompetent persons and, insofar as they have not answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. *See* Fed. R. Civ. P. 55(b)(2); *Produce Alliance, LLC v. Lombardo Imps., Inc.*, No. 2:12-cv-00433, 2013 WL 129428, at *2 (D. Nev. Jan. 9, 2013). Thus, there is no procedural impediment to entering a default judgment.

///

### 2. *Eitel* Factors

#### a. Possibility of Prejudice

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002); *see also BMW of N. Am., LLC v. Quality Star Benzz, LLC*, No. 2:12-cv-00889, 2013 WL 1338233, at *2 (D. Nev. Mar. 29, 2013). Here, Defaulting Defendants have not answered, made an appearance, or otherwise responded to the Complaint. Due to Defaulting Defendants' refusal to appear in this action, the possibility of prejudice to Plaintiff in the absence of default judgment is great.

If Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery. *See PepsiCo*, 238 F. Supp. 2d at 1177; *see also BMW of N. Am., LLC*, 2013 WL 1338233, at *2. Thus, this *Eitel* factor weighs in favor of entering default judgment.

#### b. Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors favor a default judgment where a complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading . . . contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." In order to satisfy the Rule 8 requirement, the pleading must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667-678 (2009) (citation omitted).

Plaintiff asserts the following claims against one or more Defaulting Defendant: (1) breach of contract against Regenocyte; (2) unjust enrichment against Regenocyte; (3) intentional misrepresentation against all Defendants; (4) negligent misrepresentation against all Defendants; and (5) copyright violation against Regenocyte. (Dkt. no. 1.) The Court will address each claim in turn below.

///

### i. Breach of Contract Against Regenocyte

In order to state a claim for breach of contract, Plaintiff must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (*citing Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)). The Complaint alleges that Plaintiff executed a contract with Regenocyte for a second stem cell treatment. (Dkt. no. 1 at 4 ¶ 26.) Further, Plaintiff has attached a written copy of the agreement to the Motion. (Dkt. no. 60, Ex. 2.) The Complaint alleges that Regenocyte breached this contract by failing to provide the requested treatment. (Dkt. no. 1 at 8 ¶¶ 81-85.) The Complaint further alleges that as a result of this breach and Regenocyte's refusal to return Plaintiff's payment, Plaintiff has been damaged in excess of $50,000. (*Id.* at ¶ 87.) Thus, the Court finds that the Plaintiff has stated a claim for breach of contract against Regenocyte.

### ii. Unjust Enrichment Against Regenocyte

"[U]njust enrichment occurs when a person has and retains benefits that, in equity and good conscience, belong to another." *Jensen Enters. Inc. v. Poisson Commc'ns, Inc.*, No. 3:12-cv-00100, 2013 WL 4830490, at *3 (D. Nev. Sep. 6, 2013) (citation omitted). However, a claim of unjust enrichment only exists if there is an implied agreement and is not available if there is an express contract. *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). Here, Plaintiff has alleged the existence of, and provided a copy of, an express written agreement between the parties. (Dkt. no. 1 at 4 ¶ 26; dkt. no. 60, Ex. 2.) Thus, the Court finds that Plaintiff has not stated a claim for unjust enrichment against Regenocyte.[1]

///

///

---

[1] Plaintiff, in his Motion for Default Judgment, also presents an argument that Regenocyte has been unjustly enriched by continuing to use Plaintiff's likeness in its promotional materials after Plaintiff had withdrawn his permission. (Dkt. no. 60 at 6.) However, this theory is not advanced in the Complaint (dkt. no. 1 at 8-9), nor has Plaintiff provided sufficient legal support for this claim.

### iii. Intentional Misrepresentation Against Defaulting Defendants

In order to state a claim for intentional misrepresentation, or common law fraud, Plaintiff must allege: (1) that Defaulting Defendants made a false representation to Plaintiff; (2) that the misrepresentation was made with knowledge that the representation was false; (3) that Defaulting Defendants intended to induce Plaintiff to act or refrain from acting in reliance on the representation; (4) that Plaintiff justifiably relied on the representation; and (5) that Plaintiff was harmed as a result of this reliance. *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992); *Weingartner v. Chase Home Fin., LLC*, 702 F. Supp. 2d 1276, 1289-90 (D. Nev. 2010) (citation omitted). A claim for fraud or mistake must be plead with particularity. Fed. R. Civ. P. 9(b).

Plaintiff alleges that Defaulting Defendants made representations to Plaintiff that they knew were false at the time. (Dkt. no. 1 at 9 ¶¶ 96-97.) This includes Defaulting Defendants' alleged assurances that Plaintiff's second treatment would be scheduled and performed. (Dkt. no. 60 at 7.) However, Plaintiff asserts that Defaulting Defendants knew that they would be unable perform the treatment, because Dr. Grekos' license had been suspended and Regenocyte's lab was no longer able to perform the necessary work. (*Id.* at 7, Ex. 1-3.) Plaintiff further alleges that Defaulting Defendants intended to induce him to act or refrain from acting in reliance of these false representations and that Plaintiff justifiably relied on these statements. (*Id.* at 9 ¶ 98-99.) As a result of this reliance, Plaintiff alleges he was damaged in an amount in excess of $50,000. (*Id.* at ¶ 101.)

Specifically, the Complaint states that Plaintiff had previously received one successful treatment from Defaulting Defendants and received repeated assurances that a second treatment would also be performed. (Dkt. no. 60 at 2-3.) The Complaint states that Plaintiff paid Defaulting Defendants for this second treatment. (Dkt. no. 1 at 9 ¶ 101.) Plaintiff alleges that, as a consequence of his payment and Defaulting Defendants' assurances, he waited several months before seeking another provider for the

necessary procedure. (*Id.* at 3.) Therefore, the Court finds that Plaintiff has stated a claim for intentional misrepresentation against Defaulting Defendants.

### iv. Negligent Misrepresentation Against Defaulting Defendants

In order to state a claim for negligence misrepresentation, Plaintiff must show:

"(a) a representation that is false;

(b) this representation was made in the course of the defendant's business, or any action in which [the defendant] has a pecuniary interest;

(c) the representation was for the guidance of others in their business transactions;

(d) the representation was justifiably relied upon;

(e) this reliance resulted in pecuniary loss to the relying party; and

(f) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information."

*Ideal Elec. Co. v. Flowserve Corp.*, 357 F. Supp. 2d 1248, 1255 (D. Nev. 2005) (citation omitted). The Complaint alleges that Defaulting Defendants knew that the representation they made regarding a second treatment was false and yet continued to assure Plaintiff that treatment would be provided. (Dkt. no. 1 at 5 ¶¶ 42-45.) Thus, taking Plaintiff's allegations as true, the Defaulting Defendants did not fail to exercise reasonable care, but rather intentionally relayed false representations to Plaintiff. Further, Plaintiff has neither alleged that the representation was made in the course of Defaulting Defendant's business, nor that the representation was made for the guidance of Plaintiff in his business transaction. Therefore, the Court finds that Plaintiff has failed to state a claim for negligent misrepresentation against Defaulting Defendants.

### v. Copyright Violation Against Regenocyte

In order to state a claim for copyright infringement, Plaintiff must show:  (1) valid ownership of the copyright and (2) infringement of that copyright by the alleged infringer. *Entm't Research Group, Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th

1   Cir. 1997). Plaintiff alleges that that he has certain exclusive rights pursuant to 17 U.S.C.
2   § 106. (Dkt. no. 1 at 10 ¶¶ 111-14.) Copyright protection is extended to "original works of
3   authorship fixed in any tangible medium of expression . . . from which they can be
4   perceived, reproduced, or otherwise communicated. . . ." 17 U.S.C.A. § 102. Plaintiff
5   alleges that he owns several exclusive rights concerning the use of his likeness pursuant
6   to 17 U.S.C.A. § 106. (Dkt. no. 1 at 10 ¶¶ 111–18.) However, Plaintiff's likeness, in itself,
7   is not an original work of authorship, nor can it be fixed in a tangible medium of
8   expression. Although the pictures and video that allegedly depict Plaintiffs likeness may
9   be subject to copyright law,[2] the Complaint does not allege, or state facts to support the
10  conclusion that Plaintiff owns the copyright to these materials. Thus, the Court finds that
11  Plaintiff has not stated a claim for copyright violation against Regenocyte.

### c. Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *BMW of No. Am., LLC*, 2013 WL 1338233, at *4. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Plaintiff requests compensatory damages of $45,950 be awarded against Dr. Grekos and damages of $74,500 be awarded against Regenocyte, Regenocyte Worldwide, and Regenocyte Therapeutic. (Dkt. no. 60 at 11.) Plaintiff further requests that punitive damages be awarded against Defaulting Defendants in the amount of $100,000. (*Id.*) In light of the Court's findings that Plaintiff has not stated a claim for copyright violation, the Court finds that the requested compensatory damages are not proportionate to the harm caused by Defaulting Defendants' conduct. Further, Plaintiff provides no support for the

///

---

[2]*See generally* 17 U.S.C.A. § 102(a) (listing various categories of works that may be copyrighted).

$100,000 in punitive damages. Thus, this factor weighs against granting default judgment.

### d.     Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *BMW of No. Am., LLC*, 2013 WL 1338233, at *4. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo, Inc., 238 F. Supp. 2d at 1177*. Accordingly, no genuine dispute of material facts would preclude granting Plaintiff's motion.

### e.     Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *BMW of No. Am., LLC*, 2013 WL 1338233, at *5. Plaintiff's counsel contacted Defaulting Defendants before filing this action. (Dkt. no. 60, Ex. 4.) Since filing this action, Defaulting Defendants have not responded.  Due to the repeated failure to respond, it is unlikely that the default resulted from excusable neglect.

### f.     Decision on the Merits

The seventh Eitel factor provides that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted); *See BMW of No. Am., LLC*, 2013 WL 1338233, at *5. Moreover, Defaulting Defendants' failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible. Thus, the Court is not precluded from entering default judgment against Defaulting Defendants.

### g.     Conclusion

Six out of the seven *Eitel* factors weigh in favor of granting default judgment. Therefore, the Court finds good cause to grant Plaintiff's Motion. While Plaintiff's Motion is granted, the Court reserves the determination of damages to be awarded after further

briefing. Plaintiff will need to provide support for his contention that $45,950 should be awarded against Dr. Grekos, $74,500.00 should be awarded against the Defaulting Defendants and $100,00.00 should be awarded as punitive damages. It is not clear to the Court how these figures were obtained and absent evidentiary support, Plaintiff's request for damages will not be granted.

**IV.   CONCLUSION**

It is ordered that Magistrate Judge Peggy Leen's Report and Recommendation (dkt. no. 75) is adopted and accepted in full.

It is further ordered that Default Judgment shall be entered against Defendants Intercellular Sciences, LLC and Michael Calcaterra.

It is further ordered that Default Judgment shall be entered against Defendants Regenocyte Worldwide, Inc., Regenocyte, LLC, Regenocyte Therapeutic, LLC, and Dr. Zannos Grekos.

Plaintiff is ordered to provide supplemental briefing on the issue of damages as to each Defendant, keeping in mind the Court's analysis as to the sufficiency of each claim pleaded in the Complaint. Plaintiff is instructed to attach a proposed order to his brief. Plaintiff shall file his supplemental brief within thirty (30) days of the Order issued on July 29, 2014 (dkt. no. 76).

DATED THIS 1st day of August 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE